No. 22-10774-AA

# United States Court of Appeals

*for the*

# Eleventh Circuit

———————————

KATIA GAUTHIER, Individually and as Administrator of the Estate of Peter Gauthier, and as Parent and Natural Guardian of minors, D.G. and N.G.,

*Plaintiff-Appellant,*

– v. –

HARD TO STOP LLC, *et al.*,

*Defendants,*

– and –

TOTAL QUALITY LOGISTICS, LLC,

*Defendant-Appellee*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA, CASE NO. 6:20-CV-93-RSB-CLR
(HONORABLE R. STAN BAKER)

## APPELLANT'S OPENING BRIEF

JEFFREY R. HARRIS
Georgia Bar No. 330315
JED D. MANTON
Georgia Bar No. 868587
YVONNE S. GODFREY
Georgia Bar No. 318567
HARRIS LOWRY MANTON LLP
*Attorneys for Plaintiff-Appellant*
1418 Dresden Drive NE, Suite 250
Brookhaven, Georgia 30319
(404) 961-7650

Katia Gauthier v. Total Quality Logistics LLC, 22-10774

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, counsel for Appellant Katia Gauthier hereby certifies that, to the best of counsel's knowledge, the following individuals, firms, governmental entities, and corporations have an interest in the above- captioned appeal:

Baker, Judge R. Stan

Berman Fink Van Horn, PC

Dearing, Lea C.

Franklin Law LLC

Franklin, Jimmy

G., D. (a minor) represented by Natural Guardian Katia Gauthier

G., N. (a minor) represented by Natural Guardian Katia Gauthier

Gauthier, Katia

Gauthier, Estate of Peter

Godfrey, Yvonne

Harris, Jeffrey R.

Harris Lowry Manton LLP

Harris, Rebecca Franklin

Longley, Colby E.

Katia Gauthier v. Total Quality Logistics LLC, 22-10774

Lowry, Stephen G.

Manton, Jed D.

McCorkle, Johnson & McCoy LLP

Ray, Magistrate Judge Christopher L.

Total Quality Logistics, LLC

Respectfully submitted this 13th day of May, 2022.

**HARRIS LOWRY MANTON LLP**

*/s/ Yvonne Godfrey*
YVONNE S. GODFREY
Georgia Bar No. 318567
yvonne@hlmlawfirm.com
JEFFREY R. HARRIS
Georgia Bar No. 330315
jeff@hlmlawfirm.com
JED D. MANTON
Georgia Bar No. 868587
jed@hlmlawfirm.com

410 E. Broughton Street
Savannah, GA 31401
(404) 961-7650 (t)
(404) 961-7651 (f)
***Attorneys for Plaintiff-Appellant***

**Statement Regarding Oral Argument**

Plaintiff-Appellant Katia Gauthier requests oral argument.  Whether a plaintiff's claims against a broker for negligent hiring, selection, and retention is preempted by the Federal Aviation Administration Authorization Act ("FAAAA") is a matter of first impression for the Eleventh Circuit, and while the Third and Ninth Circuits have provided guidance, it is an area of the law that has resulted in conflicting decisions in trial courts within and without this Circuit.

## TABLE OF CONTENTS

**Page**

Statement Regarding Oral Argument ........................................................................i

TABLE OF AUTHORITIES ................................................................................. iii

Statement of Subject-Matter and Appellate Jurisdiction ...........................................1

Statement of the Issues...........................................................................................2

Statement of the Case.............................................................................................3

    Course of the Proceedings ................................................................................3

    Statement of the Facts.......................................................................................3

    Standard of Review...........................................................................................6

Summary of the Argument.......................................................................................7

Argument and Citation of Authority.........................................................................9

    A.    The negligent hiring and selection of a motor carrier is a
             grounded in common law negligence and does not relate to a
             broker's prices, routes, or services with respect to the
             transportation of property such that it is preempted by the
             FAAAA ....................................................................................................12

    B.    The safety regulation exception was specifically designed to
             protect claims like Plaintiff's from FAAAA preemption ..................20

    C.    Numerous courts find that analyzing FAAAA preemption of
             broker claims requires a fact-specific inquiry, but the district
             court dismissed all claims against TQL based solely on the
             allegations in the First Amended Complaint......................................24

CONCLUSION .....................................................................................................27

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Abdullah v. Amer. Airlines, Inc.*,
  181 F.3d 363 (3d Cir. 1999) ..........................................................15

*Amerijet International, Inc. v. Miami-Dade County*,
  627 F. App'x 744 (11th Cir. 2015) ..............................................15

*Anderson v. Am. Airlines*,
  2 F.3d 590 (5th Cir. 1993) ............................................................17

*Bedoya v. Am. Eagle Express Inc.*,
  914 F.3d 812 (3d Cir. 2019) .................................... 10, 17, 18, 19

*Bertram v. Progressive Se. Ins. Co.*,
  No. 2:19-CV-01478, 2021 WL 2955740 (W.D. La. July 14, 2021) ...... 10, 21

*Branche v. Airtran Airways, Inc.*,
  342 F.3d 1248 (11th Cir. 2003) ................................. 12, 14, 15, 17

*Charas v. Trans World Airlines, Inc.*,
  160 F.3d 1259 (9th Cir. 1998) .....................................................16

*Ciotola v. Star Transportation & Trucking, LLC*,
  481 F. Supp. 3d 375 (M.D. Pa. 2020).............................. 10, 18, 19

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504 (1992)......................................................................21

*Columbus v. Ours Garage and Wrecker Serv., Inc.*,
  536 U.S. 424 (2002).......................................................................20

*Creagan v. Wal-Mart Trans., LLC*,
  354 F. Supp. 3d 808 (N.D. Ohio 2018) .......................................11

*Crouch v. Taylor Logistics Co., LLC*,
  No. 17-CV-1089-SMY, 2021 WL 4355403 (S.D. Ill. Sept. 24, 2021) .. 21, 22

*Dan's City Used Cars, Inc. v. Pelkey*,
  569 U.S. 251 (2013).............................................................. 13, 14

*Desiano v. Warner-Lambert & Co.*,
  467 F.3d 85 (2d Cir. 2006) ..........................................................21

*Doe I v. Young Women's Christian Assn. of Greater Atlanta*,
    740 S.E.2d 453 (Ga. Ct. App. 2013) ...........................................................23

*Geddes v. Amer. Airlines, Inc.*,
    321 F.3d 1349 (11th Cir. 2003) ...................................................................16

*Gillum v. High Standard, LLC et al.*,
    No. 19-cv-1378, 2020 WL 444371 (W.D. Tex. Jan. 27, 2020) ...................10

*Grant v. Lowe's Home Ctr.,*
    No. 5:20-cv-2278, 2021 WL 288372 (D.S.C. Jan. 28, 2021) ......................10

*Hentz v. Kimball Transp., Inc.*,
    No. 6:18-cv-1327, 2018 WL 5961732
    (M.D. Fla. Nov. 14, 2018) ................................................................. *passim*

*In re Repository Techs., Inc.*,
    601 F.3d 710 (7th Cir. 2010) .......................................................................22

*Krauss v. IRIS USA, Inc.*,
    No. 17-cv-778, 2018 WL 2063839 (E.D. Pa. May 3, 2018) ........................19

*LaGrange v. Boone*,
    __ So. 3d __, 2022 WL 1021598 (Slip Opinion) (La. Ct. App. 2022)..........10

*Lawson-ross v. Great Lakes Higher Educ. Corp.*,
    955 F.3d 908 (11th Cir. 2020) .......................................................................6

*Lopez v. Amazon Logistics, Inc.*,
    458 F. Supp. 3d 505 (N.D. Tex. 2020) ................................................. *passim*

*Loyd v. Salazar*,
    No. 17-cv-977, 2019 WL 4577108 (W.D. Okla. Sept. 20, 2019) ................10

*Mann v. C.H. Robinson Worldwide, Inc.,*
    No. 7:16-cv-102, 2017 WL 3191516, (W.D. Va. July 27, 2017)..... 10, 16, 17

*Miller v. C.H. Robinson Worldwide, Inc.*,
    976 F.3d 1016 (9th Cir. 2020) ............................................................. 10, 21

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)............................................................................. 12, 13

*Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*,
    707 F.3d 883 (7th Cir. 2013) .......................................................................22

iv

*Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc.*,
    No. 09-cv-2365, 2011 WL 671747 (S.D.N.Y. Feb. 18, 2011)......................26

*Parise v. Delta Airlines, Inc.*,
    141 F.3d 1463 (11th Cir. 1998) ...................................................................12

*Perez v. Penske Logistics, LLC*,
    No. 5:20-CV-05591, 2021 WL 3661017 (E.D. Pa. Aug. 17, 2021).............19

*Popal v. Reliable Cargo Delivery, Inc.*,
    No. 20-cv-39, 2021 WL 1100097 (W.D. Tex. Mar. 10, 2021) ....................10

*Quinones v. Ladejo*,
    174 N.E.3d 407 (Ohio Ct. App. 2021) ........................................................21

*Scott v. Milosevic*,
    372 F. Supp. 3d 758 (N.D. Iowa 2019) .......................................................10

*Smith v. Am. W. Airlines, Inc.*,
    44 F.3d 344 (5th Cir. 1995) .........................................................................15

*Stansfield v. Minute Maid Co.*,
    124 F. Supp. 3d 1226 (N.D. Fla. 2015) .........................................................6

*Total Quality Logistics, LLC v. Lith Transp., Inc.*,
    No. 116-cv-789, 2016 WL 5476148 (S.D. Ohio Sept. 29, 2016) ................25

*Traction Tire, LLC v. Total Quality Logistics, LLC*,
    No. 19-cv-5150, 2020 WL 6044179 (E.D. Pa. Oct. 13, 2020)......................25

*VRC LLC v. Dallas*,
    460 F.3d 607 (5th Cir. 2006) .......................................................................20

*Xiaoyun Lucy Lu v. AirTran Airways, Inc.*,
    631 F. App'x 657 (11th Cir. 2015)...............................................................17


**Statutes & Other Authorities:**

28 U.S.C. § 1291 .................................................................................................1

28 U.S.C. § 1332 .................................................................................................1

49 U.S.C. § 14501(c) ....................................................................................9, 13

49 U.S.C. § 14501(c)(1)................................................................................9, 11

49 U.S.C. § 14501(c)(2)(A) ...............................................................................9

O.C.G.A. § 34-7-20......................................................................................................23

Federal Rule of Appellate Procedure 3 ......................................................................1

Federal Rule of Appellate Procedure 4 ......................................................................1

## Statement of Subject-Matter and Appellate Jurisdiction

Plaintiff-Appellant Katia Gauthier originally filed the instant action in Georgia state court. Former Defendants Hard to Stop LLC and Ronald Shingles filed a notice of removal to the United States District Court for the Southern District of Georgia and alleged that the district court had subject matter jurisdiction over this action under 28 U.S.C. § 1332, because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is a dispute between citizens of different states, with the exception of then-Defendant Norman Fries. The district court dismissed Fries from the case by consent Order (Doc. 20), after which the district court granted Plaintiff's motion to file an Amended Complaint and add Defendant-Appellee Total Quality Logistics, LLC (Docs. 25, 27).

On April 25, 2022, this Court issued jurisdictional questions to which both Plaintiff and Defendant-Appellee Total Quality Logistics, LLC responded on May 10, 2022. The jurisdictional questions are currently pending before this Court.

Provided this Court determines that the record sufficiently establishes jurisdiction or that the allegations may be amended on appeal to this effect, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The district court entered final judgment disposing of all claims on February 11, 2022. (Doc. 70). Plaintiff-Appellant timely filed her Notice of Appeal on March 3, 2022, pursuant to Federal Rules of Appellate Procedure 3 and 4. (Doc. 71).

## Statement of the Issues

A.    Whether the district court erred when it determined that negligent selection, hiring, and retention claims against a broker relate to broker services "with respect to the transportation of property" such that they are preempted by the Federal Aviation Administration Authorization Act ("FAAAA") as a matter of law.

B.    Whether the district court erred when it determined that a broker's negligent selection, hiring, and retention of an unsafe motor carrier who violated motor vehicle safety laws, causing a motor vehicle collision and death, was not related to motor vehicle safety and therefore not within the safety regulation exception to FAAAA preemption.

C.    Whether the district court erred when it applied FAAAA preemption at the motion-to-dismiss phase, despite numerous courts (including the court below) describing the analysis as a fact-specific inquiry.

**Statement of the Case**

**Course of the Proceedings**:

Plaintiff-Appellant Katia Gauthier ("Plaintiff") originally filed the instant action in Georgia state court. (Doc. 1-10). Former Defendants Hard to Stop LLC and Ronald Shingles filed a notice of removal to the United States District Court for the Southern District of Georgia. (Doc. 1). After Plaintiff learned from the notice of removal that Defendant-Appellee Total Quality Logistics, LLC ("TQL") served as a broker for the load that Hard to Stop and Shingles transported (Doc. 1 at 6), she moved to amend her complaint and add TQL to the case. (Doc. 21). The district court granted Plaintiff's motion (Doc. 25), and Plaintiff filed an Amended Complaint (Doc. 27). TQL did not file an Answer to Plaintiff's allegations, instead filing a Motion to Dismiss (Doc. 35), to which Plaintiff responded (Doc. 41) and TQL replied (Doc. 43). While TQL's motion to dismiss was pending, Plaintiff resolved her claims against the other Defendants in the case. (Doc. 69). On February 4, 2022, the district court granted TQL's motion to dismiss (Doc. 69), from which Plaintiff appeals (Doc. 71).

**Statement of the Facts:**

This action arises from a collision between a tractor trailer and a motor vehicle that occurred on May 28, 2020, on Georgia State Route 73 in Claxton, Georgia. (Doc. 1-10 at ¶¶ 12, 18-24; Doc. 27 ¶¶ 13-26). Plaintiff alleged that

3

Defendant Shingles, the operator of the tractor trailer, and his employer, Defendant Hard to Stop, a common motor carrier under the Federal Motor Carrier Safety Act, acted negligently in multiple ways, causing the subject collision and the death of Plaintiff's deceased husband, Peter Gauthier. (Doc. 27 ¶¶ 13-26).

Specifically, at approximately 9:30 p.m., Shingles was operating a 2010 Freightliner tractor with improperly maintained brakes and while distracted, so he missed the turn to his destination. (Doc. 27 ¶¶ 13, 19). Shingles then made a negligent, reckless, and illegal U-turn in the middle of the road, but he was unable to complete it due to the steering radius of the tractor while a trailer was attached. (*Id.* ¶¶ 20-21). As a result, Shingles blocked multiple lanes of travel on the road at night—made worse by the fact that many lights on the tractor and trailer were not functioning properly, the headlights were not properly adjusted, and the reflective tape/marking on the tractor and trailer was not maintained in accordance with industry and federal regulations. (*Id.* ¶¶ 22-24). Plaintiff's husband was unable to avoid colliding with the trailer, which blocked his lane of travel, and the collision caused his death. (*Id.* ¶¶ 23-26).

When the subject collision occurred, Hard to Stop and Shingles were picking up product that was manufactured by Claxton Poultry Farms. (Doc. 1-10 ¶¶ 7, 14; Doc. 27 ¶¶ 15-16). They had been selected for the job by TQL. (Doc. 1 at 6). Accordingly, Plaintiff alleged claims of ordinary negligence, negligent selection,

4

hiring, and retention, negligent maintenance, and joint venture against TQL. (Doc. 27 ¶¶ 27-64).[1]  Plaintiff specifically alleged that TQL had a duty to act with reasonable care. (*Id.* ¶¶ 48-50). TQL breached that duty when it negligently hired, contracted with, and/or retained Shingles, when it knew or should have known of Shingles's terrible record, including multiple speeding tickets, driving with a suspended license, battery, and constructive possession of controlled substances. (*Id.* ¶¶ 35, 42-43). Additionally or alternatively, TQL further breached that duty when it negligently hired, contracted with, and/or retained Hard to Stop, when it knew or should have known of Hard to Stop's history of lack of proper licensing, improper maintenance on its vehicles, and insurance issues. (*Id.* ¶¶ 35, 52).

Notably, the district court found that Plaintiff sufficiently alleged negligent selection, hiring, and retention against TQL (Count II of the Amended Complaint), but it found that those claims were preempted by the FAAAA. (Doc. 69 at 10, 12). The district court found that, even though the safety regulation exception of the FAAAA protects state common-law tort claims from preemption, Plaintiff's claim against TQL for negligent selection, hiring, and retention of a motor carrier was

---

[1] For purposes of the errors asserted in this appeal, Plaintiff has focused on the dismissal of her claims against TQL for negligent selection, hiring, and retention (Count II), as those are the claims to which the district court applied FAAAA preemption.

"too tenuously connected to motor vehicle safety to fall within" the safety regulation exception.  (Doc. 69 at 27).

**Standard of Review:**

This Court reviews *de novo* the district court's grant of a motion to dismiss for failure to state a claim.  *Lawson-ross v. Great Lakes Higher Educ. Corp*., 955 F.3d 908, 915 (11th Cir. 2020).  This Court likewise reviews *de novo* whether federal law preempts a state law claim.  *Id.*  Importantly, "[t]he existence of an affirmative defense such as preemption will not usually support a motion to dismiss."  *Stansfield v. Minute Maid Co.*, 124 F. Supp. 3d 1226, 1230 (N.D. Fla. 2015).  The only exception is if the affirmative defense "clearly appears on the face of the complaint."  *Id.* (quotation omitted).

## Summary of the Argument

Nothing in the FAAAA's explicit language extends so far as to preempt claims for ordinary negligence in the hiring, selection, and retention of a motor carrier, and to engage in such a broad reading of FAAAA preemption is contrary to the guidance from the Supreme Court and this Court, as well as the decisions by the other Circuit Courts that have addressed the issue. The district court's Order dismissing Plaintiff's claims against TQL demonstrates significant inconsistencies and problematic reasoning that must be corrected by this Court. Specifically, the district court engaged in an expansive reading of the term broker services "with respect to transportation of property" that was contrary to the guidance from this Court when analyzing the term "services" in the context of federal preemption. Moreover, despite the safety regulation exception to FAAAA preemption, the district court decided that a broker's selection of a motor carrier with a documented history of safety violations who then violated motor vehicle rules of safety, causing a motor vehicle collision and the death of Plaintiff's husband, was "only tenuously related" to motor vehicle safety. In doing so, the district court rejected decisions from the Third Circuit and the Ninth Circuit supporting the conclusion that state-law based claims of negligence like Plaintiff's against brokers are not preempted by the FAAAA. Finally, despite its emphasis that Plaintiff's claims against TQL were fact-specific, the district court dismissed all counts in Plaintiff's First

7

Amended Complaint on the face of the complaint.  Accordingly, this Court should reverse the district court's Order of dismissal to allow the parties to conduct full discovery related to Plaintiff's state law claim for negligent hiring, selection, and retention.

## Argument and Citation of Authority

The two Circuit Courts that have addressed FAAAA claims against brokers have rejected attempts to apply an overly broad interpretation of FAAAA preemption. Eleventh Circuit precedent further supports the conclusion that the FAAAA does not preclude the ability of states to hold brokers to common law duties of ordinary care to further the goal of motor vehicle safety for its citizens.

The text of the FAAAA at issue is contained in 49 U.S.C. § 14501(c)(1), which provides:

> **(c) Motor carriers of property.-**
>
> **(1) General rule. -** Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law <u>related to a price, route, or service of any</u> motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, <u>broker</u>, or freight forwarder <u>with respect to the transportation of property.</u>

(Underlining added). The next subsection, 49 U.S.C. § 14501(c)(2)(A), referred to as the "safety regulation exception," provides in relevant part:

> **(2) Matters not covered. -** Paragraph (1) – (A) <u>shall not restrict the safety regulatory authority of a State with respect to motor vehicles</u>, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization . . . .

(Underlining added).

Federal decisions fall into three groups as to this issue.  The first group of courts find no FAAAA preemption of personal injury claims against brokers because negligent hiring claims are not sufficiently "related to" the bargained-for services of a broker.  *See, e.g., Ciotola v. Star Transportation & Trucking, LLC*, 481 F. Supp. 3d 375, 387 (M.D. Pa. 2020) (applying *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812 (3d Cir. 2019)); *Scott v. Milosevic*, 372 F. Supp. 3d 758, 769 (N.D. Iowa 2019); *Mann v. C.H. Robinson Worldwide, Inc.,* No. 7:16-cv-102, 2017 WL 3191516, (W.D. Va. July 27, 2017).  The second group of courts find no FAAAA preemption of common law negligence claims based on the safety regulatory exception. See, e.g., *Miller v. C.H. Robinson Worldwide, Inc*., 976 F.3d 1016 (9th Cir. 2020); *LaGrange v. Boone*, __ So. 3d __, 2022 WL 1021598 (Slip Opinion) (La. Ct. App. 2022); *Bertram v. Progressive Se. Ins. Co*., No. 2:19-CV-01478, 2021 WL 2955740 (W.D. La. July 14, 2021); *Lopez v. Amazon Logistics, Inc*., 458 F. Supp. 3d 505, 512 (N.D. Tex. 2020); *Popal v. Reliable Cargo Delivery, Inc*., No. 20-cv-39, 2021 WL 1100097 (W.D. Tex. Mar. 10, 2021); *Grant v. Lowe's Home Ctr.,*No. 5:20-cv-2278, 2021 WL 288372, at *3 (D.S.C. Jan. 28, 2021).  Finally, the third group of courts have found that negligence claims against freight brokers are preempted under the FAAAA and do not fall within the safety exception.  *See, e.g., Gillum v. High Standard, LLC et al*., No. 19-cv-1378, 2020 WL 444371 (W.D. Tex. Jan. 27, 2020); *Loyd v. Salazar*, No. 17-cv-977, 2019 WL

10

4577108, at *4 (W.D. Okla. Sept. 20, 2019); *Creagan v. Wal-Mart Trans., LLC*, 354 F. Supp. 3d 808, 812 (N.D. Ohio 2018).

Research reveals that the only circuit courts to address the issue of FAAAA preemption for claims against brokers, the Ninth Circuit and the Third Circuit, have held that the plaintiff's claims were not preempted. The district court's decision, if affirmed, would be a departure from the reasoning of both of those Circuits, as well as the reasoning in this Court's precedent addressing similar federal preemption schemes.

Ultimately, the district court engaged in an overly expansive interpretation of § 14501(c)(1) when it held that common law claims for negligent hiring and retention relate to a "service" of a broker "with respect to the transportation of property." (Part A, below). The district court's reasoning also rendered the safety regulation exception meaningless when it concluded that Plaintiff's claim that a broker negligently hired an unsafe motor carrier who engaged in unsafe practices with respect to operation of a motor vehicle was, nevertheless, not related to motor vehicle safety. (Part B, below). Finally, the district court made these highly fact-specific determinations based on the allegations in Plaintiff's First Amended Complaint without even requiring an Answer or meaningful discovery from TQL. (Part C, below).

A.    The negligent hiring and selection of a motor carrier is a grounded in common law negligence and does not relate to a broker's prices, routes, or services with respect to the transportation of property such that it is preempted by the FAAAA.

Nothing in the FAAAA's explicit language extends so far as to preempt claims for ordinary negligence in the hiring and selection of a motor carrier, and to engage in such a broad reading of FAAAA preemption is contrary to the guidance from the Supreme Court and this Court.  As the Supreme Court observed in *Morales v. Trans World Airlines, Inc*., "Pre-emption may be either express or implied, and is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." 504 U.S. 374, 383 (1992) (quotation and alteration omitted).  This Court clarified, "In cases where Congress has chosen to explicitly address the issue of pre-emption, however, it generally is inappropriate to look beyond that provision to imply pre-emption from the statute's substantive dictates."  *Branche v. Airtran Airways, Inc*., 342 F.3d 1248, 1253 (11th Cir. 2003).  In other words, "Congress' enactment of a provision defining the pre-emptive reach of a statute *implies that matters beyond that reach are not pre-empted*."  *Id.* (emphasis added).

"Whether a federal statute preempts state law is a question of congressional intent."  *Parise v. Delta Airlines, Inc.*, 141 F.3d 1463, 1465 (11th Cir. 1998).  To evaluate that intent, the Supreme Court has instructed to "begin with the language employed by Congress and the assumption that the ordinary meaning of that

language accurately expresses the legislative purpose." *Morales*, 504 U.S. at 383. The Supreme Court has noted that the FAAAA preempted state trucking regulation because Congress found "state governance of intrastate transportation of property had become unreasonably burdensome to free trade, interstate commerce, and American consumers." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013). The Supreme Court further instructed that, in the context of § 14501(c), the phrase "related to" "embraces state laws having a connection with or reference to carrier rates, routes, or services, whether directly or indirectly." *Id.* at 260 (quotation omitted).

However, the Supreme Court has cautioned that "the breadth of the words 'related to' does not mean the sky is the limit" and that § 14501(c) "does not preempt state laws affect carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." *Id.* (quotation and alteration omitted). "[T]he FAAA was enacted with the primary goal of minimizing economic regulation, not state police power over safety regulation." *Lopez*, 458 F. Supp. 3d at 516.

Much of the courts' interpretation of the FAAAA flows from the Court's interpretations of the Airline Deregulation Act of 1978 ("ADA") because the FAAAA copied nearly all of the ADA's preemption provision. *Hentz v. Kimball Transp., Inc.*, No. 6:18-cv-1327, 2018 WL 5961732, at *3 (M.D. Fla. Nov. 14, 2018). The Eleventh Circuit has adopted a broad interpretation of "service" as

used in the ADA, defining air carrier service to "include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Branche*, 342 F.3d at 1256-57.

However, the *Branche* Court cautioned that the purpose of ADA's preemptive provision is to increase reliance on competitive market forces rather than pervasive federal regulation, and it emphasized that "this purpose is not served by interpreting the term 'services' to include those aspects of airline operations that are not bargained for by carriers and their passengers." *Id.* at 1258. Moreover, "the FAAAA's preemption provision contains one phrase the ADA's preemption provision does not—a phrase of paramount importance." *Hentz,* 2018 WL 5961732 at *3. According to the Supreme Court, the FAAAA "contains one conspicuous alteration—the addition of the words 'with respect to the transportation of property.'" *Dan's City*, 569 U.S. at 261. The addition of this phrase "massively limits the scope of preemption ordered by the FAAAA." *Id.* (quotation omitted). Thus, "for purposes of FAAAA preemption, it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" *Id.*

As illustrative background, this Circuit has previously rejected the argument that the ADA preempts state law claims designed to protect individuals.  For

example, in *Amerijet International, Inc. v. Miami-Dade County*, 627 F. App'x 744, 751 (11th Cir. 2015), this Court rejected the argument that a living wage ordinance interfered with or regulated the services carriers provide, stating that any "indirect economic influences" resulting from the ordinance are insufficient to trigger preemption.  Similarly, in *Branche*, this Court rejected the argument that state law employment claims relating to safety were preempted by the ADA.  342 F.3d at 1260.  In reaching that conclusion, the court noted, "[S]aftey is not a basis on which airlines compete for passengers, and as such is not something for which air travelers bargain."  *Id.*; *see also Abdullah v. Amer. Airlines, Inc.*, 181 F.3d 363, 373 (3d Cir. 1999) ("Safe operations . . . are a necessity for all airlines.  Whether or not to conform to safety standards is not an option for airlines in choosing a mode of competition.  For this reason, safety of an airline's operations would not appear to fall within the ambit of the ADA and its procompetition preemption clause."); *Smith v. Am. W. Airlines, Inc.*, 44 F.3d 344, 347 (5th Cir. 1995) ("[T]he Smiths' claim is that the safety of their flight was jeopardized by the airline's permitting a visibly deranged man to board. If appellants ultimately recover damages, the judgment could affect the airline's ticket selling, training or security practices, but it would not regulate the economic or contractual aspects of boarding. Any such effect would be too tenuous, remote or peripheral to be pre-empted . . . .").

Here, the question is whether Georgia's common law duty to exercise ordinary care in selection, hiring, and retention directly targets or significant impacts a broker's prices, routes, or services.  Under these circumstances, courts have repeatedly found no preemption.

In *Hentz*,[2] the plaintiff brought personal injury claims after he suffered traumatic injuries in a collision with a tractor-trailer and asserted claims against the broker for negligent hiring and vicarious liability for actions of the driver and driver's employer.  2018 WL 5961732 at *1.  The court, analyzing the complete preemption issue, noted, "In enacting the FAAAA, Congress intended to deregulate the trucking industry—*not to preempt state law negligence claims stemming from trucking accidents*."  *Id.* at *3 (emphasis added); *see Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir. 1998) (en banc) (applying the ADA and noting that "Congress did not intend to preempt passengers' run-of-the-mill personal injury claims"); *Mann*, 2017 WL 3191516, at *7 (noting that a negligent hiring claim "does not have anything more than a

---

[2] *Hentz* is a case dealing with the analysis of federal removal based on complete preemption, rather than the affirmative defense of ordinary preemption, and for this reason, the district court questioned Plaintiff's reliance on it below.  However, courts' analysis of the substantive content of the FAAAA and its provisions remains useful to analyzing both types of preemption, as both require an analysis of the language of the Act and the congressional intent. *See, e.g., Geddes v. Amer. Airlines, Inc.*, 321 F.3d 1349, 1352-53 (11th Cir. 2003); *Hentz*, 2018 WL 5961732, at *2.

tenuous, remote, or peripheral connection to the price, route, or service of a broker").

Given this context, it is no surprise that numerous courts have rejected the argument that the FAAAA preempted tort claims against brokers based on negligence, like those in this case. *See Mann*, 2017 WL 3191516, at *7 (gathering cases). In *Hentz*, the district court specifically rejected a broker's attempt to classify state law negligence claims stemming from a traffic crash "as relating to a route or service and concerning transportation of property." 2018 WL 5961732, at *3.

The same analysis applies to negligent hiring claims against a broker. *See, e.g., Xiaoyun Lucy Lu v. AirTran Airways, Inc.*, 631 F. App'x 657, 663 (11th Cir. 2015) (analyzing plaintiff's claims for negligent hiring, training, and supervision under the general federal pleading standards, not the asserted ADA preemption). "Indeed, employment standards fall squarely within the traditional police powers of the states, and as such should not be disturbed lightly." *Branche*, 342 F.3d at 1259; *see Anderson v. Am. Airlines*, 2 F.3d 590, 597-98 (5th Cir. 1993) (holding that the connection between claim for retaliatory discharge and airline "services" was too remote to be preempted). Claims that focus on the relationship as to who a company employs are not preempted. *See Bedoya*, 914 F.3d at 820-21.

17

In *Bedoya*, the Third Circuit offered guidance on FAAAA preemption, noting, "Although laws that regulate inputs may impact costs and may in turn affect prices charged and services provided to consumers, no one thinks that the ADA or the FAAA preempts these regulations and many comparable state laws." 914 F.3d at 822.  An illustrative case is *Ciotola v. Star Transportation & Trucking, LLC*, 481 F. Supp. 3d 375 (M.D. Pa. 2020), where, like in this case, the plaintiff asserted claims against the broker for vicarious liability of the driver, negligent hiring, supervision, and retention of the driver and the driver's trucking company, and joint venture.  The district court rejected the argument that Pennsylvania's common-law duty of ordinary care directly targets or significantly impacts a motor carrier's prices, routes, or services, finding that the duty of ordinary care applied to all businesses in the state.  *Id.* at 388.  "As the Third Circuit explained, state laws that target resource inputs, such as labor, capital, and technology, of a motor carrier are not preempted by the FAAAA."  *Id.* (citing *Bedoya*, 914 F.3d at 388).  In *Ciotola*, the district court further found that the common law duty of ordinary care does not bind a broker to provide or not provide a particular price, route, or service, and that there are a "variety of avenues" to comply with Pennsylvania's tort law.  481 F. Supp. 3d at 389.

Here, the district court reasoned that the instant case is different from *Ciotola* because those claims boiled down to imposing a duty of ordinary and

18

reasonable care upon freight brokers, and Plaintiff's claims do not. (Doc. 69 at

22). The district court supported this analysis with *Krauss v. IRIS USA, Inc.*, No.

17-cv-778, 2018 WL 2063839 (E.D. Pa. May 3, 2018) (Doc. 69 at 20), a case

heavily relied upon by TQL below. However, as noted by the *Ciotola* court,

"*Krauss* can be differentiated . . .because *Krauss* was decided before the Third

Circuit's guidance in *Bedoya*." 481 F. Supp. 3d at 389. The *Ciotola* court also

noted, "The *Krauss* court states a significant economic impact, but does not

explain how it reached that conclusion." Id. at 389-90. Cases decided within the

Third Circuit after *Bedoya* continue to follow its guidance and determine that

negligent hiring and retention claims are grounded in state tort law that all

businesses must follow, and therefore, those claims are not preempted. *See, e.g.,*

*Perez v. Penske Logistics, LLC,* No. 5:20-CV-05591, 2021 WL 3661017, at *8

(E.D. Pa. Aug. 17, 2021)]

Here, just like in *Perez*, *Ciotola*, *Hentz*, and others, Plaintiff specifically

alleged negligent selection, hiring, and retention claims, state common law duties

that apply to every employer. There is nothing special about this state law that

targets brokers' services with respect to transportation of property. Instead, it

targets hiring decisions and employment standards, an area this Court has held was

outside of the scope of federal preemption in the context of the ADA. It follows

the guidance of the Supreme Court, the prior preemption reasoning of this Court,

19

and the decisions within the Third Circuit to find that Plaintiff's claims are not preempted as a matter of law.

B.    The safety regulation exception was specifically designed to protect claims like Plaintiff's from FAAAA preemption.

To protect against an overly broad reading of actions "related to a price, route, or service" of a broker, the FAAAA contains a safety regulation exception, which directly preserves the "safety regulatory authority of a State with respect to motor vehicles." The district court's reasoning renders this exception meaningless and is directly contrary to the 9th Circuit's decision in *Miller* and to cases across the country decided after the 9th Circuit's guidance.

The Supreme Court has held that the safety regulation exception should be broadly construed: "Preemption analysis starts with the assumption that the historic police powers of the state were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Columbus v. Ours Garage and Wrecker Serv., Inc.*, 536 U.S. 424, 426 (2002) (quotation omitted); *accord VRC LLC v. Dallas*, 460 F.3d 607, 612 (5th Cir. 2006). The Supreme Court addressed Congress's "clear purpose" in enacting the safety regulation exception and concluded that it was "to ensure that its preemption of States' economic authority over [that industry] . . . not restrict the States' existing power over safety." *Ours Garage*, 536 U.S. at 439 (quotations omitted). According to the Ninth Circuit, "that power plainly includes the ability to regulate safety through common-law tort

20

claims." *Miller*, 976 F.3d at 1026 (alteration marks omitted).  The Second Circuit has also observed, "Historically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as 'a critical component of the States' traditional ability to protect the health and safety of their citizens.'" *Desiano v. Warner-Lambert & Co*., 467 F.3d 85, 86 (2d Cir. 2006) (quoting *Cipollone v. Liggett Grp., Inc*., 505 U.S. 504, 544 (1992)).

In *Miller*, the only circuit court decision dealing directly with negligent hiring of a freight broker and FAAAA preemption, the plaintiff sustained serious injuries when his vehicle was struck by a semi-tractor trailer, and he sued the freight broker that arranged for the trailer to transport the goods, alleging that the broker negligently selected an unsafe motor carrier.  976 F.3d at 1020-21.  The Ninth Circuit found that the claims fell within the safety regulation exception to the FAAAA.  *Id.* at 1020.  In the case below, the district court even cited *Miller* in support of its reasoning (Doc. 69 at 19), but then issued a ruling completed contradicting its holding.

Even cases decided after *Miller* outside of the Ninth Circuit have followed its rationale.  *See Crouch v. Taylor Logistics Co., LLC*, No. 17-CV-1089-SMY, 2021 WL 4355403, at *5 (S.D. Ill. Sept. 24, 2021); *Bertram v. Progressive Se. Ins. Co*., No. 2:19-CV-01478, 2021 WL 2955740, at *6 (W.D. La. July 14, 2021); *Quinones v. Ladejo*, 174 N.E.3d 407, 500–01 (Ohio Ct. App. 2021).

21

The reasoning in *Crouch v. Taylor Logistics Co., LLC* is particularly persuasive. In *Crouch*, the district court expressly found the "*Miller* Court's analysis persuasive and consistent with Congress' intent that the FAAAA regulate economic activity, not safety":

> Brokers may be required to use ordinary care to vet motor carriers. While that may in turn result in increased costs, Illinois certainly has an interest in regulating the safety of drivers on the road, including trucks. Its negligence laws serve that function by permitting these types of tort actions to proceed. . . . This view aligns with the Seventh Circuit's limited application of complete preemption, which "requires a clear showing of Congressional intent to eliminate state law entirely."

2021 WL 4355403, at *5 (quoting *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc*., 707 F.3d 883, 895 (7th Cir. 2013); *In re Repository Techs., Inc*., 601 F.3d 710, 723 (7th Cir. 2010)).

In *Lopez*, like in this case, the plaintiff alleged claims against a broker that were based on the driver's operation of the vehicle and the personal injury caused by that operation. 458 F. Supp. 3d at 513. As to the plaintiff's negligence claims related to the operation and maintenance of the vehicle and the training and management of the driver, the district court found that these were "at best remotely related to the brokers' proffered service: arranging for transportation," and therefore, they were not preempted by the FAAAA. *Id.* Specifically, the *Lopez* court found that personal injury tort claims, including a negligent-hiring claim, are

22

within the scope of section 14501(c)(2)'s safety regulation exception to preemption, determining both that common law claims constitute an exercise of a state's "safety regulatory authority" and that a negligent-hiring claim asserted against a broker is "with respect to motor vehicles." *Id.* at 515. The court determined "that a claim seeking damages for personal injury against a broker for negligently placing an unsafe carrier on the highways is a claim that concerns motor vehicles and their safe operation." *Id.* at 516.

This conclusion is consistent with the state law supporting Plaintiff's negligent hiring and retention claims. Under Georgia law, an employer has a legal duty to exercise ordinary care in the selection of its own employees. *See* O.C.G.A. § 34-7-20 ("The employer is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency . . . ."); *Doe I v. Young Women's Christian Assn. of Greater Atlanta*, 740 S.E.2d 453 (Ga. Ct. App. 2013) ("An employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable that the employee's tendencies could cause the type of harm sustained by the plaintiff." (quotation omitted)). This is not an elevated or industry-specific duty of care.

As stated above, Plaintiff specifically alleged in "Count 2: Negligent Selection, Hiring, and Retention" that TQL had a duty to act with reasonable care.

(Doc. 27 ¶¶ 48-50). Plaintiff alleged that TQL breached that duty despite its knowledge, actual or constructive, of Shingles' poor record (*Id.* ¶ 51) *and* because it "knew or should have known that Defendant Hard to Stop had a history of lack of proper licensing, improper/lack of maintenance on its vehicles, and a lack of the federally-mandated minimum insurance coverage for motor carriers" (*Id.* ¶ 52). Plaintiff specifically alleged, "Total Quality Logistics' negligence also violated laws intended to protect and prevent accidents such as the collision at issue in this case that fatally injured Peter Gauthier." (*Id.* ¶ 54).

Despite these clear allegations grounded in principles of ordinary negligence geared toward safety and applicable to any employer, the district court found that Plaintiff's allegations related specifically to brokers' services and were not connected with motor vehicle safety. (Doc. 69 at 27). However, the foregoing case law makes clear that Plaintiff's claim is directly related to a state's regulatory authority to promote motor vehicle safety and thus squarely within the safety regulation exception to FAAAA preemption.

C.   Numerous courts find that analyzing FAAAA preemption of broker claims requires a fact-specific inquiry, but the district court dismissed all claims against TQL based solely on the allegations in the First Amended Complaint.

In its order, the district court acknowledged that "most courts treat FAAAA preemption as a fact-intensive inquiry which depends on the nature of the plaintiff's allegations and the underlying claims alleged." (Doc. 69 at 15). Despite

this acknowledgment, the district court made its decision solely based on the face of the First Amended Complaint.

Related to the case-specific nature of FAAAA preemption, it is notable TQL has taken inconsistent positions on FAAAA preemption in other cases. For example, in 2016, TQL argued successfully to a district court that the FAAAA did not preempt breach of contract claims arising out of a broker-carrier agreement. *Total Quality Logistics, LLC v. Lith Transp., Inc.,* No. 116-cv-789, 2016 WL 5476148, at *3 (S.D. Ohio Sept. 29, 2016). However, in 2020, TQL argued that the FAAAA did preempt breach of contract claims because they were related to the services that TQL provided as broker. *Traction Tire, LLC v. Total Quality Logistics, LLC*, No. 19-cv-5150, 2020 WL 6044179, at *7 (E.D. Pa. Oct. 13, 2020).

Perhaps these inconsistent positions are due to the factually specific nature of the claims at issue in the litigation—which is exactly why disposition of the claims at the motion-to-dismiss phase is improper in this case. For example, whether FAAAA preemption applies also depends on whether TQL was truly acting as a broker or a carrier in the underlying transaction. *See, e.g., Lopez*, 458 F. Supp. 3d at 511 (noting that, as a threshold matter, the court must determine whether the defendant was acting as a broker within the meaning of the FAAAA, which provides a different definition than that of the Federal Motor Carrier Safety

Act).  Indeed, "[t]he difference between a carrier and a broker is often blurry . . . and it is apparent from the case law that the carrier/broker inquiry is inherently fact-intensive and not well suited to summary judgment."  *Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc*., No. 09-cv-2365, 2011 WL 671747, at \*5 (S.D.N.Y. Feb. 18, 2011) (quotations and citations omitted).

Of the cases discussed above, many were decided with the benefit of a developed record at the summary judgment stage.  Plaintiff submits that, if nothing else, the fact- and case-specific nature of FAAAA preemption suggests that Plaintiff should have the opportunity to conduct full and complete discovery into her claims.  It is worth pointing out that, here, the claims involve TQL's negligent selection of a motor carrier and driver with a prior, documented history of unsafe practices.  While on the job for which it was hired by TQL, that motor carrier's driver went on to perform an unsafe and illegal u-turn in the middle of the road, at night, while operating a truck with improperly and inadequately maintained headlights and reflective marking, causing the untimely death of Plaintiff's husband and the father of their twin daughters.  Plaintiff's claims raise ordinary principles of common law negligence encompassed by state police powers to further the goal of improving motor vehicle safety within its borders, so that the loss Plaintiff has suffered can be avoided or reduced for others in the future.

26

**Conclusion**

The foregoing demonstrates why Plaintiff respectfully requests that this Court reverse the dismissal ordered by the district court and remand for further proceedings.

Dated: May 13, 2022

Respectfully submitted,

/s/ Yvonne S. Godfrey
YVONNE S. GODFREY
Georgia Bar No. 318567
JEFFREY R. HARRIS
Georgia Bar No. 330315
JED D. MANTON
Georgia Bar No. 868587
HARRIS LOWRY MANTON LLP
*Attorneys for Plaintiff-Appellant*
1418 Dresden Drive NE, Suite 250
Brookhaven, Georgia 30319
(404) 961-7650

## **Certificate of Compliance**

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) as the brief contains 5,946 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) as this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Yvonne S. Godfrey
Yvonne S. Godfrey

## **Certificate of Service**

I hereby certify that on May 13, 2022, 4 copies of the brief were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for overnight delivery at the following address:

David J. Smith
Clerk of Court
U.S. Court of Appeals for the 11th Circuit
56 Forsyth St., N.W.
Atlanta, Georgia 30303

On this same date, a copy of the brief was served on all counsel of record via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*/s/ Melissa Pickett*
Melissa Pickett
Counsel Press

Filing and service were performed by direction of counsel